UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| LISBETH P., | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | 1:25-cv-00413-JAW |
| | ) | |
| FRANK BISIGNAN, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION

Plaintiff applied for supplemental security income benefits (SSI) under Title XVI of the Social Security Act asserting an alleged onset date of October 16, 2015.  Defendant, the Social Security Administration Commissioner, found that although Plaintiff has multiple severe impairments, Plaintiff is not disabled within the meaning of the Social Security Act because substance use is a contributing factor material to the determination of disability. Plaintiff filed this action to obtain judicial review of Defendant's administrative decision under 42 U.S.C. § 405(g).

Following a review of the record, and after consideration of the parties' arguments, I recommend that the Court affirm the administrative decision.

### THE ADMINISTRATIVE HISTORY AND FINDINGS

In December 2018, on Plaintiff's application for SSI benefits, an Administrative Law Judge (ALJ) determined that Plaintiff was not disabled.  (R. 247-72.)  When Plaintiff appealed from the decision to the Appeals Council, the Appeals Council remanded the matter to the ALJ for further evaluation of Plaintiff's substance use.  (R. 274.)  After a

hearing and a two supplemental hearings on remand, on April 3, 2024, the ALJ concluded that Plaintiff was not disabled. (R. 29-73.) Because the Appeals Council found no reason to review that decision (R. 20), Defendant's final decision is the April 3, 2024, decision of the ALJ.

The decision of the ALJ tracks the familiar five-step sequential evaluation process for analyzing social security disability claims, 20 C.F.R. § 416.920. The ALJ found that Plaintiff has severe medically determinable impairments consisting of depressive order secondary to alcohol abuse, anxiety disorder, personality disorder, substance use disorder, borderline intellectual functioning, long QT syndrome, mild left carpal tunnel syndrome, and borderline left ulnar neuropathy in the elbow. (R. 36-37.) The ALJ further found that Plaintiff had alleged other conditions that did not qualify as severe medically determinable impairments. (R. 35-37.)

The ALJ initially determined that when Plaintiff's substance use was considered, she "would be unable to adapt to changes in the work environment and would be off task consistently," and was consequently unable to perform past relevant work or any other jobs that exist in significant numbers in the national economy. (R. 49.) The ALJ ultimately determined, however, that if Plaintiff stopped substance use, she would have the residual functional capacity (RFC) to perform light work with certain limitations, the ability to perform past relevant work, and the ability to perform other jobs that exist in significant numbers in the national economy. (R. 54-60.)

**STANDARD OF REVIEW**

A court must affirm the administrative decision provided the decision is based on the correct legal standards and is supported by substantial evidence, even if the record contains evidence capable of supporting an alternative outcome. *Manso-Pizarro v. Sec'y of HHS*, 76 F.3d 15, 16 (1st Cir. 1996); *Rodriguez Pagan v. Sec'y of HHS*, 819 F.2d 1, 3 (1st Cir. 1987). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a finding. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of HHS*, 647 F.2d 218, 222 (1st Cir. 1981). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C. § 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999).

**DISCUSSION**

Plaintiff contends the ALJ failed to assess appropriately some of Plaintiff's alleged impairments and symptoms. Plaintiff more specifically argues that the ALJ erred when she determined that Plaintiff did not establish that fibromyalgia, Asperger's syndrome, peripheral neuropathy, PTSD, learning disorder, borderline intellectual functioning, and language disorder constitute severe medically determinable impairments.

**A.    Step Two: Severe Impairment Determination**

At step two of the sequential evaluation process, a social security disability claimant must establish the alleged conditions are severe, but the burden is de minimis and is designed merely to screen out groundless claims. *McDonald v. Sec'y of HHS*, 795 F.2d 1118, 1124 (1st Cir. 1986). The ALJ may find that an impairment or combination of

3

impairments is not severe when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individuals' age, education, or work experience were specifically considered." *Id*. (quoting Social Security Ruling 85-28). In other words, an impairment is severe if it has more than a minimal impact on the claimant's ability to perform basic work activities on a regular and continuing basis. *Id*. A diagnosis, standing alone, however, does not establish that the diagnosed impairment would have more than a minimal impact on the performance of work activity. *Dowell v. Colvin*, No. 2:13-cv-00246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014).

In this case, the ALJ cited relevant medical records, including the opinions of medical experts, in determining that the conditions (fibromyalgia, Asperger's syndrome, peripheral neuropathy, PTSD, learning disorder, intellectual functioning, and language disorder) were not severe medically determinable impairments. (R. 35-37.) Plaintiff's challenge to the ALJ's assessment of these alleged conditions at step two fails to account for Defendant's criteria for assessment of the conditions as medically determinable impairments. For example, in evaluating whether fibromyalgia qualifies as a medically determinable impairment, Defendant cannot rely upon a diagnosis alone. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Instead, a medically determinable impairment of fibromyalgia is established only by proof that conforms to recognized diagnostic criteria including, among other things, findings of at least 11 positive tender points on physical examination, bilaterally, above and below the waist, at specific sites of the body, and evidence that other disorders that could cause the symptoms or signs of fibromyalgia have

been excluded. *Id.* Although there are references to fibromyalgia in the medical record, including an assessment of fibromyalgia with chronic pain in the context of a consultative medical exam by Leya Laverriere, PA-C in March 2023, (R. 2407-09), Plaintiff has pointed to no evidence in the record conforming to the specific diagnostic criteria. The ALJ determined that the same was true with respect to Plaintiff's alleged impairments of Asperger's, autism spectrum disorder, and PTSD, finding no indication that the diagnostic criteria for the impairments were met. (R. 37.)

While the ALJ's assessment is supportable, even if the ALJ's findings were erroneous, Plaintiff has not shown how the conditions would result in any functional limitations beyond those assessed by the ALJ. *See Carlton v. Soc. Sec. Admin. Comm'r*, No. 1:10-cv-00463-GZS, 2011 WL 4433660, at *5 (D. Me. Sept. 21, 2011) (explaining that it is the plaintiff's burden to supply the medical evidence needed to establish the degree to which her claimed impairments limit her functional capacity); *see also Davis v. Colvin*, No. 1:14-cv-343-JHR, 2015 WL 3937423, at *4 (D. Me. June 25, 2015) ("[T]he important point here is that the plaintiff does not point to any evidence that there was any further limitation on her [functional] ability …, and the burden of proof rests with the claimant through the establishment of an RFC."). In fact, the ALJ considered all Plaintiff's symptoms when assessing Plaintiff's RFC, regardless of the cause of the symptoms. (R. 35, 37, 40.) [1]

---

[1] To the extent that Plaintiff challenges the ALJ's RFC assessment as omitting limitations caused by Plaintiff's alleged impairments and symptoms, including neuropathy and impaired working memory, that challenge effectively asks the Court to re-weigh the evidence and reach a conclusion more favorable to Plaintiff. That is not the Court's role. The "responsibility for weighing conflicting evidence, where reasonable minds could differ as to the outcome, falls on the Commissioner and his designee, the ALJ. It

Because the ALJ considered all Plaintiff's symptoms, and because Plaintiff has not demonstrated how a finding that the conditions constitute severe medically determinable impairments would have changed the outcome, remand is not warranted based on Plaintiff's claimed error at step two of the analysis. *See Bolduc v. Astrue,* No. 09–CV–220–B–W, 2010 WL 276280, at *4 n. 3 (D. Me. Jan. 19, 2010) ("[A]n error at Step 2 is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim.").

### B.    Effect of Substance Use

"In 1996, Congress enacted the Contract with America Advancement Act (CAAA), which amended the Social Security Act to preclude disability benefits where drug addiction or alcoholism was a contributing factor material to the Commissioner's determination of disability." *Paul P. v. Saul*, No. 1:20-cv-00192-JDL, 2021 WL 2383222, at *5 (D. Me. June 9, 2021) (rec. dec. accepted July 23, 2021) (quotation marks and citation omitted). That amendment was codified at 42 U.S.C. § 1382c(a)(3)(J). The "key factor" the Commissioner examines in determining whether drug addiction or alcoholism (DAA) "is a contributing factor material to the determination of disability" is whether the claimant would still be disabled if the claimant stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1).

At the ALJ level, the ALJ "determines whether DAA is material to the determination of disability." SSR 13-2p, 2013 WL 621536, at *14 (Feb. 20, 2013)).[2]

_____

does not fall on the reviewing court." *Seavey v. Barnhart*, 276 F.3d 1, 10 (1st Cir. 2001) (citation omitted).
[2] To explain the policies guiding its consideration of whether DAA is material to a determination of

6

SSR 13-2p defines DAA as "maladaptive patterns of substance use that lead to clinically significant impairment or distress," consistent with the definition of substance use disorders "in the latest edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM).'" *Id.* at *3. As with any other "medically determinable impairment," the ALJ "must have objective medical evidence—that is, signs, symptoms, and laboratory findings—from an acceptable medical source" that supports a finding that a claimant has a maladaptive pattern of substance use and meets the other requirements for diagnosis of a substance use disorder in the DSM. *Id.* at *10. The requirement of objective medical evidence "can be satisfied . . . with clinical findings reported by a psychiatrist, psychologist, or other appropriate acceptable medical source based on examination of the claimant." *Id.* Acceptable medical sources include licensed medical and osteopathic doctors. SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006).

The claimant bears the burden of establishing disability throughout the sequential evaluation process, including when the Commissioner applies the steps of that process a second time to determine whether the claimant would be disabled if she were not using substances. SSR 13-2p, 2013 WL 621536, at *4. In this process, the Commissioner considers whether DAA affects the claimant's medically determinable impairments. *Id.* at *5. If yes, and DAA could be material, the Commissioner evaluates whether the other impairments might improve to the point of non-disability in the absence of DAA. *Id.* at *7. If yes, then DAA is deemed material, and the claim for benefits must be denied. *Id.* at

---

disability, the Social Security Administration issued Social Security Ruling 13-2p (SSR 13-2p). 2013 WL 621536, at *1.

\*\*5-7. "To support a finding that DAA is material," there must be evidence in the record establishing that a claimant with a co-occurring mental disorder would not be disabled in the absence of DAA. *Id.* at \*9.

In this case, the ALJ first assessed Plaintiff's RFC with substance use and supportably concluded that Plaintiff's impairments precluded any work capacity. Subsequently, the ALJ assessed the RFC without substance use and concluded that Plaintiff could perform, with limitations, either past relevant work or jobs that were in sufficient number in the national economy.

In her assessment of Plaintiff's substance use, the ALJ relied on the opinions of Billings Fuess, Ph.D., who offered medical expert testimony at one of the hearings on remand. (R. 104-119.) Dr. Fuess testified that the medical records revealed that Plaintiff had been diagnosed with depression secondary to alcohol abuse, referring to the results of a psychological consultative exam performed by Richard Parker, Ph.D., in May 2018. (R. 106, 1430-34.) Dr. Fuess noted that the record reflected significant treatment for opiate dependence, referencing progress notes and psychotherapy records from Groups Recover Together dated February through June 2019. (R. 106, 1787-1867.) Those notes, in turn, reflect Plaintiff's self-report that she began using prescription opiates at the age of 16 and then began using heroin and was, at the time of intake, using opioids daily. (R. 1856-58.) The records additionally reflect that Plaintiff had previously participated in outpatient, self-help, and residential treatment programs without completion. (R. 1858-60; *see also* R. 2122-2174.) In his testimony, Dr. Fuess also observed that according to the medical records, Plaintiff overdosed by injecting Wellbutrin in June 2019, at which time she was

8

diagnosed with recurrent, severe major depressive disorder and moderate to severe substance use disorder.  (R. 106, 1871.)

When asked to opine about how substance use was affecting Plaintiff's mental health, Dr. Fuess replied that, based on his extensive experience treating substance use, "it often exacerbates depression" and anxiety disorders and that opiate use, in particular, suppressed awareness and resulted in sedation. (R. 108-09.) When asked whether Plaintiff's ability to concentrate, persist, and maintain pace would improve in the absence of substance use, Dr. Fuess replied that, in his experience, "people with extended periods of sobriety will have improvements" in concentration and maintaining attention.  (R. 112.) He acknowledged that the record did not show how sobriety would impact Plaintiff's functional capacity because the record did not reveal significant periods of abstinence from substance use.  (R. 110, 114.)

Plaintiff, who also testified at the hearings, offered a different perspective.  During the hearing in August 2022, she reported that she had not been using opiates for over a year and had not been drinking "for a while" but that abstinence had not improved her mental health or ability to concentrate.  (R. 124.)  During the hearing in September 2020, Plaintiff testified that she was drinking several times a week – usually "a pint . . . smaller than a big bottle" and that doing so "put a blanket over [her] so" that all her problems "sort of aren't there[.]"  (R. 159.)  She testified that she had once been sober from alcohol for three months, during which time her mental health had been worse.  (R. 165.)

The record reveals a significant history of substance use during the relevant period. Plaintiff was diagnosed with alcoholic pancreatitis in September 2015, a condition that

resulted in multiple hospitalizations in 2017 and 2018, when she reported using alcohol daily and expressed no interest in abstaining from alcohol.  (R. 892, 1213, 1221-22, 1525-1549.)  Plaintiff pursued treatment for opioid dependence through a Suboxone clinic for part of 2019, and she described herself as compliant "most of [the] time."  (R. 1563.)  In February 2020, Plaintiff presented to the emergency department requesting inpatient alcohol detox and reporting that she had been "drinking daily for years with few interruptions of more than a day or so."  (R. 1692.)

After an encounter with Plaintiff in May 2019, Lilly M. Gardner, M.D. observed that many evaluations of Plaintiff's medical complaints have been inconclusive "usually due to loss of insurance coverage or resumption [of] substance misuse with subsequent hospitalizations."  (R. 1564; *see also* R. 1578.)  Records from Dr. Gardner's office also support Dr. Fuess's observation that substance withdrawal has been a factor contributing to Plaintiff's recurrent bouts of anxiety.  (R. 1565.)

After reviewing the medical records and considering Plaintiff's testimony, the ALJ found that Plaintiff's substance use did not appear to impact her physical impairments.  (R. 51.)  The ALJ, however, with citation to record evidence, determined that without substance use, Plaintiff had only a moderate limitation, rather than a marked limitation with substance use, in concentration, persistence, and maintaining pace.  (R. 39, 52.)  The ALJ noted that "[t]his area of mental functioning refers to the abilities to focus attention on work activities and stay on task at a sustained rate and [was] the most impacted by the claimant's [substance] use, or in this case, lack of use, as also noted by Dr. Fuess."  (R. 52.)  The medical records support the ALJ's determination. For instance, following a 2016

10

assessment of Plaintiff during a time when Plaintiff was evidently in recovery from substance use, Cathleen London, M.D., characterized Plaintiff's insight as "good judgment," her mental status as "normal mood and affect and active and alert," and her "recent memory normal and remote memory normal." (R. 933.)  Dr. London described Plaintiff as "stable on suboxone." (R. 935.)

The ALJ's determination is supported by substantial evidence.  The ALJ supportably found (a) that Plaintiff has a long history of substance use that has prevented and likely continues to prevent her from performing and maintaining work and (b) that without substance use, Plaintiff's limitations would not preclude past relevant work or other jobs that exist in sufficient numbers in the national economy.  Remand, therefore, is not warranted.

## CONCLUSION

Following a review of the record and after consideration of the parties' arguments, for the reasons explained above, I recommend the Court affirm the administrative decision.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 24th day of July, 2026.

11